Daniel A. TRASK, Petitioner,

v.

Allan L. ROBBINS, Warden, Maine State Prison, Respondent.

No. 7443.

United States Court of Appeals, First Circuit.

Feb. 24, 1970.

David M. Cox, Brewer, Me., with whom Libhart & Cox, Brewer, Me., was on brief, for appellant.

John W. Benoit, Jr., Deputy Atty. Gen., for appellee.

Before ALDRICH, Chief Judge, WOODBURY,* Senior Circuit Judge, and McENTEE, Circuit Judge.

WOODBURY, Senior Circuit Judge.

This Petitioner for a writ of habeas corpus was indicted, tried by jury on plea of not guilty, convicted and sentenced in the Maine Superior Court for robbing one Orman Lawing. The Supreme Judicial Court of Maine denied his appeal. State v. Trask, 223 A.2d 823 (1966). Throughout these proceedings Trask was represented by court appointed counsel.

Trask then filed a petition for post conviction relief in the Supreme Judicial Court of Maine. His petition was heard and denied by a single justice of that court and his appeal therefrom was denied. Trask v. State, 247 A.2d 114 (1968). In these proceedings Trask was also represented by court appointed counsel.

Trask next filed the instant petition in the United States District Court for the District of Maine alleging the same grounds for relief that he had advanced in the state court. The court below allowed Trask to proceed in forma pauperis, appointed counsel for him at his request and held a hearing at which counsel conceded that the Petitioner had exhausted his state remedies as required by Title 28 U.S.C. § 2254(b) and agreed that the Petitioner's right to relief should be determined on the record of the Petitioner's original trial and on the

record of his petition to the state court for post conviction relief.[1]

The District Court after hearing counsel filed an opinion in which it said that it agreed with the Maine court that Trask had suffered no constitutional prejudice and therefore ordered Trask's petition for habeas corpus dismissed and denied the writ. Trask thereupon took the present appeal on certificate of probable cause issued by the court below. We affirm.

The facts fully appear in the decisions of the Supreme Judicial Court of Maine cited hereinabove. It will suffice to say here that late on the afternoon of August 30, 1965, Orman Lawing, a seaman on leave from his ship, went to a cafe in Belfast, Maine, and there struck up an acquaintance with the Petitioner, Trask. The two drank together off and on until 10 or 10:30 that evening when they left the cafe. Lawing testified that as they walked along a side street in Belfast he turned his head to locate Trask, who was walking behind, when he was felled by a heavy blow on the head delivered by Trask. The next morning at three o'clock or so Lawing was discovered in a dazed condition beside the road by a local police officer and a taxi driver and taken to his ship. Later in the day Lawing was taken to the Waldo County Hospital for treatment of his injuries consisting of cuts and bruises and a hair line fracture of the skull. Lawing's pocket book and papers, but not his money, were later found in the area where he had been discovered earlier in the day.

Five days later on September 5th Trask, who was then confined in the Waldo county jail on a charge of having robbed a local store, was taken by a

---

* By Special Designation.

1. An independent examination of the record discloses that Trask was given a full and fair hearing on his petition to the Supreme Judicial Court of Maine and that the single justice of that court who heard his petition filed a full opinion in which he gave careful and thorough consideration to the issues presented, fully articulated the constitutional standards which he applied and made express findings of fact which are amply supported by the evidence. Under these circumstances there was no need for a further evidentiary hearing in the court below. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

deputy sheriff in uniform "to see somebody," he was not told who. Trask was taken to the Waldo County Hospital where a local police officer joined them and then taken to Lawing's room. Trask was in jail clothing but not handcuffed. The officers may or may not have been carrying arms. The evidence on this point is not clear. When the trio entered Lawing's room the curtains around his bed were drawn aside and according to the Petitioner's testimony Lawing immediately exclaimed: "You did a hell of a job on me" or something of that sort.

The Petitioner contends that his hospital room identification by the State's prosecuting witness in the absence of counsel or effective waiver thereof denied him due process of law. In support of his contention he relies primarily upon the trilogy of cases decided by the Supreme Court on June 12, 1967. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

The confrontation with Lawing of which Trask complains occurred on September 5, 1965. Therefore the exclusionary rules fashioned in *Wade* and *Gilbert, supra,* to deter law enforcement authorities from exhibiting an accused to witnesses before trial for identification purposes without notice and in the absence of counsel do not apply, for in Stovall v. Denno, *supra,* at page 296, 87 S.Ct. at page 1969 the Court held that the rules of *Wade* and *Gilbert* "affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date." That is to say, June 12, 1967. The question in this case as in *Stovall* is whether in any event the Petitioner's confrontation with the State's key witness was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Stovall v. Denno, *supra,* at page 302, 87 S.Ct. at page 1972.

To resolve this question we must look to the "totality of the circumstances" surrounding the confrontation. Stovall v. Denno at page 302, 87 S.Ct. 1967. See also Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

In this case as in *Stovall* the only witness who could exonerate the accused was confined in the hospital so that he could not attend a police "line up" where he might be able to identify the accused from a group. And, also as in *Stovall,* time was pressing because of the serious physical condition of the witness and also because at the time of the confrontation Lawing was being prepared for removal by ambulance from the Waldo County Hospital to the Maine Medical Center in Portland where specialized neurological treatment for his fractured skull was available. These circumstances bring Trask's case within the holding in *Stovall.*

Moreover Trask was not presented to Lawing with any introductory remarks by the police officers such as the question whether he "was the man" as in *Stovall* or the statement "this is the man who robbed you" as in United States ex rel. Trignani v. Russell, 405 F.2d 1119 (C.A.3, 1968), upon which he relies. Instead Lawing's identification of Trask in the hospital room was spontaneous and immediate. And Lawing had had more than merely a fleeting glimpse of his assailant at the moment of the assault. He and Trask had spent several hours drinking together in the cafe before the assault. Nor is there any evidence that Lawing was so far under the influence of alcohol that he was unable to recognize his attacker.

It is true that shortly after his admission to the hospital Lawing had stated that he was unable to identify his assailant. But the medical evidence is that Lawing at first was mentally confused because of the brain concussion he had suffered but that his mental condition had shown marked improvement by September 5th. It is also true that before the confrontation Lawing had seen a pic-

ture of Trask published in a local newspaper in connection with an account of the robbery of the local store with which Trask had been charged and was being held in jail, and it is true that Trask had made a tentative arrangement with local counsel to represent him on that charge.[2] But these are factors of relatively minor significance in the context of the "totality of the circumstances" surrounding Trask's confrontation with Lawing.

A review of the entire record in this case convinces us that on the "totality of the circumstances" this is a weaker case for relief than *Stovall.*

The judgment of the District Court is affirmed.

2. Trask had not made any arrangement for representation by counsel on the charge of robbing Lawing nor had counsel been appointed for him, for at the time of the confrontation he had not been charged with that robbery; he was being held in jail only on the wholly separate and unrelated charge of having robbed a local store.