UNITED STATES ex rel. Edward Stanley MILLER and Joseph T. Quinones, Petitioners,

v.

J. E. LaVALLEE, Warden of Clinton Prison, Respondent.

No. 69-C-883.

United States District Court, E. D. New York.

July 29, 1970.

Edward Stanley Miller, pro se.

Michael E. Timm, New York City, for petitioner Quinones.

Louis J. Lefkowitz, Atty. Gen., New York City, for respondent, by Stephen P. Seligman, Asst. Atty. Gen., of counsel.

JUDD, District Judge.

## MEMORANDUM AND ORDER

In this habeas corpus proceeding by a state prisoner, the principal question is whether pretrial identification was improperly suggestive.

Both petitioners were convicted of robbery in the first degree after a jury trial in the Supreme Court, Queens County. They were charged with holding up a bar and grill at gunpoint in March, 1962. The question of identification was crucial, since there was no other clear evidence that either was present at the scene of the robbery.

The conviction was reversed by the Appellate Division for admission in evidence of a gun that was not properly identified. People v. Miller, 22 A.D.2d 958, 256 N.Y.S.2d 110 (1964). The Court of Appeals reversed this decision, and remitted the matter to the Appellate Division, which then affirmed the conviction. 17 N.Y.2d 559, 268 N.Y.S.2d 324, 215 N.E.2d 507 (1966), 25 A.D.2d 819, 269 N.Y.S.2d 1009 (1966), aff'd, 19 N.Y. 2d 878, 280 N.Y.S.2d 677, 227 N.E.2d 598 (1967), cert. den. 392 U.S. 942, 88 S.Ct. 2324, 20 L.Ed.2d 1404 (1968). Coram nobis petitions were denied by the Queens County Supreme Court, whose orders were also affirmed. People v. Miller, 31 A.D.2d 787, 298 N.Y.S.2d 666 (2d Dept. 1969), cert. den. Miller v. New York, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). This petition for federal habeas corpus followed. After receiving the Attorney General's response to an order to show cause, the court set the matter down for hearing and took testimony on four separate days.

The witnesses who identified petitioners at the trial were Thomas Walker, proprietor of the tavern, his son, and a customer named Walter Funk. They had a substantial opportunity to observe the robbers, who were present on the premises for nearly an hour before committing the robbery, although wearing hats, overcoats and dark glasses most of the time. The accuracy of the identification was cast in doubt by the fact that Walker and Funk told the police on the night of the robbery that both robbers were Puerto Rican * and that they differed in height much more than was the case with the two petitioners. Miller was actually of German descent and not Puerto Rican or Spanish, but a photograph of him at a time when he wore a mustache might have been described as Spanish. Miller is an intelligent person, who had studied Spanish and might have used the language that night to conceal his identity. On the other hand, one of the men who was in the tavern at the time of the holdup said at the habeas corpus hearing that the taller robber (Miller was taller than Quinones) did not have a mustache, and did not look like petitioner Miller as he now appears. In any event,

* Funk said "two spics held the place up."

there was a serious issue of fact concerning the validity of the identification.

The petitioners were arrested in Brooklyn about ten days after the robbery in connection with an accident to a stolen car. An alert policeman assigned to the case that night, on learning that Miller was on parole from a Queens robbery, suspected that both men might have been connected with other robberies, and decided to check unsolved cases in the 104th Precinct in Queens. He summoned Walker by phone at about two o'clock the next morning to come to a Brooklyn station house and identify the suspects, saying that they had them on another charge. Mr. Walker testified:

> "I tried my best to get out of it and he placed an awful lot of importance on the fact that these might be the men and it was then that I went down."

Walker and his wife drove to the Liberty Avenue station house, where he was first shown a revolver which the police said was taken from one of the men he was about to view. It looked like the one used in the robbery. The policemen said, "We think we have the men." Walker was then taken upstairs through the squad room to a smaller room where he could look through a glass window into the squad room.

The testimony concerning the viewing of the petitioners is inconsistent, but it is clear that there was not a normal lineup. A police officer who was present testified that the petitioners were in handcuffs and that they were bloody and disheveled from the accident. Walker, curiously, denies any recollection of the handcuffs, or of petitioners' clothes being torn. I accept the testimony of the policeman, which confirms that of both petitioners in this respect. It may have been that Walker was looking at the faces more than at the rest of their bodies, or that he was convinced before he looked, or that his recollection was dim in 1970.

Walker saw eight or more men strolling around the room, and immediately identified the petitioners. He had been shown at least fifty photographs on the night of the robbery, and had not identified any of them; there is nothing to show that a photo of either petitioner was shown to him. After this viewing, Walker saw the petitioners about eight times in court at various adjournments of the arraignment.

The policeman who arrested petitioners did not know any reason why a lineup could not have been held.

Walker told his son that he had identified the suspects. Four months later his son was taken to a lineup, where the two petitioners appeared with two older and taller detectives. He picked out the petitioners. The usual practice was to have six men in a lineup.

The third identification witness at the trial, Walter Funk, testified at the habeas corpus hearing that Miller did not look like either of the men who held him up, but that the event was eight years ago.

After the jury found the men guilty, the court offered to set aside the verdict and accept a plea to robbery in the third degree, but petitioners maintained their innocence, and refused to accept the proposal. The court then sentenced Miller to a term of fifteen to thirty years and Quinones to a term of ten to twenty years.

### The Applicable Case Law

This case arose several years before the Supreme Court had held that defendants had a right to be represented by counsel at pretrial lineups. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Therefore the question is whether the confrontation, on the totality of surrounding circumstances, was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); United States ex rel. Rutherford v. Deegan, 406 F.2d 217, 219 (2d Cir. 1969), cert. den.

395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969).

The validity of pretrial identification without counsel has been considered in many cases since the *Wade* and *Stovall* decisions. Among those where the procedure has been held improper are:

United States ex rel. Stevenson v. Mancusi, 409 F.2d 801 (2d Cir. 1969) (suspects standing in front of cells when identified);

Mason v. United States, 414 F.2d 1176, 134 U.S.App.D.C. 280 (1969) (suspect picked from a dozen defendants in courtroom for preliminary hearings);

*Cf.* Wright v. United States, 404 F.2d 1256, 131 U.S.App.D.C. 279 (1968) (remanded for evidentiary hearing where getaway automobile parked at station house and witness saw it before viewing suspect).

The following are illustrative cases sustaining convictions in spite of pretrial identifications without counsel :

Bates v. United States, 405 F.2d 1104, 132 U.S.App.D.C. 36 (1968) (Burger, J.,—view in vicinity of crime, thirty minutes afterward);

United States ex rel. Anderson v. Mancusi, 413 F.2d 1012 (2d Cir. 1969) (man with clothes described by victim, picked up in vicinity, identified at police station less than an hour after crime);

Trask v. Robbins, 421 F.2d 773 (1st Cir. 1970) (suspect taken to victim's hospital room five days after robbery);

United States v. Shannon, 424 F.2d 476 (3d Cir. 1970) (two other witnesses placed defendant in robbery vehicle just before the offense);

Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed. 387 (June 22, 1970) (affirming trial court's finding of no unfairness, where lineup was held, and defendant was identified while he was getting into position).

This is not a case where there was any urgent need for prompt identifica-tion, or where the identification was bolstered by a description given the police at the time of the crime, or where there was substantial confirmatory evidence. It was not a case where the defendants might benefit from prompt release if they were not identified. This case therefore falls outside the line described by Judge (now Chief Justice) Burger in the *Bates* case (405 F.2d at 1106):

"Prudent police work would confine these on-the-spot identifications to situations in which possible doubts as to identification needed to be resolved promptly; absent such need the conventional line-up viewing is the appropriate procedure."

Petitioners have already been in custody for more than eight years. Additional confinement of twelve years for one of them, and twenty-two for the other, on identifications which may have been tainted by unnecessary police pressure, is hard to justify. On all the facts of the case, the court holds that the suggestive circumstances of Mr. Walker's initial viewing created such a risk of misidentification that the conviction should not stand.

### Other Grounds for Relief

This ruling makes it unnecessary to consider petitioners' other grounds for relief, except to note that neither seems adequate.

The imposition of a sentence within the range set by law is a matter of the trial court's discretion, not raising constitutional questions. Miller v. Gladden, 341 F.2d 972 (9th Cir. 1965); *Cf.* United States v. Hoffman, 137 F.2d 416 (2d Cir. 1943). The fact that a court may offer leniency to a contrite defendant does not mean that a legal sentence on a defendant who has been found guilty is a penalty for continuing to assert his innocence.

As for petitioner Quinones' claim that he was denied effective assistance of counsel, the court rules that his constitutional rights were not violated. No evidence was offered at the habeas cor-

pus hearing that the alleged alibi witness would in fact have testified favorably, if counsel had been granted time to find her.

Michael E. Timm, Esq., who was assigned to represent petitioner Quinones, deserves commendation for his patient, diligent and effective efforts.

It is

Ordered that petitioners be released from custody unless the State sets a date for a new trial within sixty days hereafter.