**Douglas PLAYER, Petitioner,**

v.

**Carl D. BERRY, Superintendent,
Woodbourne Correctional
Facility, Respondent.**

No. CV 91–0056.

United States District Court,
E.D. New York.

Feb. 26, 1992.

Douglas Player, pro se.

James Catterson, Suffolk County Dist. Atty. by Barbara D. Rose, Riverhead, N.Y., for respondent.

WEXLER, District Judge.

Petitioner, Douglas Player ("petitioner"), appearing *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's application is denied.

## BACKGROUND

On January 14, 1986, two men forcibly entered a dwelling in Brentwood, Suffolk County, New York. One of them, later identified as petitioner, was wearing a navy blue ski suit and a black ski mask, and was carrying a sawed-off shotgun in his left hand. Present in the home were William Bordies ("Bordies") and his girlfriend, Joanne Wiesbecker ("Wiesbecker"), both of whom recognized the masked gunman from previous encounters with him.[1]

Petitioner pointed the shotgun at Bordies' face and ordered him and Wiesbecker to get down on the floor. When they did not, petitioner grabbed Bordies by the back of his jacket and shoved him onto the floor. The other man did the same to Wiesbecker. Petitioner demanded gold, money, and cocaine. Bordies gave him two of the gold rings that he was wearing but was unable to remove a third one from his finger. Petitioner checked Bordies' pockets and threatened to blow Bordies' head off on the

---

**1.** Bordies testified that he knew petitioner for many years because petitioner was the next door neighbor of Bordies' cousin, who Bordies visited on a twice-a-week basis. Wiesbecker had met petitioner in 1985 and had seen and spoken to him a couple of times thereafter, as recently as two weeks before the incident. Both Bordies and Wiesbecker testified that they recognized petitioner by his size and distinctive deep voice.

count of three if he did not produce more money or cocaine. He had counted to two when Wiesbecker screamed that Bordies did not have anything else. Petitioner instructed the second man to check Wiesbecker for gold chains. She had none.

Petitioner asked Bordies if anyone else was in the house. Bordies told him that his brother, Adam, and Adam's girlfriend, both of whom lived in the house, were in a bedroom in the rear of the house. Petitioner dragged Bordies to the bedroom but it was unoccupied. Petitioner threw Bordies back into the hallway and threatened to shoot him if he did not get the remaining ring off his finger. Bordies forced it off and gave it to petitioner. The man standing over Wiesbecker alerted petitioner that the police were coming. Petitioner ordered Bordies and Wiesbecker to count to one hundred, and the two men exited through the front door.

Almost immediately thereafter, Bordies' friend, Derrick Porter ("Porter"), came into the house. He told them that he had seen an orange station wagon pulling away from the house. At that point, Bordies' brother, Adam, returned with the police. Bordies and Wiesbecker were taken to the police precinct where they filed a complaint. When they returned to Bordies' house, Adam, Porter, and Juan, who also lived in the house, were in the living room. Several minutes later, petitioner, who was carrying a ski mask, came in with a friend and asked Bordies what was wrong. Bordies did not respond. Petitioner said to Wiesbecker, "I know you. I remember you." Tr.[2] 85. Petitioner stayed about two minutes and then left. Wiesbecker saw an orange station wagon pulling out of the driveway. Porter identified it as the same car he had seen earlier. Both Bordies and Wiesbecker reconfirmed their identification of petitioner as the intruder.

Soon thereafter, petitioner was indicted by the Grand Jury and charged with one count of burglary in the first degree, pursuant to § 140.30 of the New York Penal Law, and one count of robbery in the first degree, pursuant to § 160.15 of the New

York Penal Law. On August 4, 1986, Sandoval/Huntley hearings were held and certain statements made by petitioner were suppressed by the trial court.

The prosecution established its case, in large part, by calling Bordies and Wiesbecker as witnesses. Both of them testified that they knew petitioner prior to the date of the crime and they identified him by his size, clothing, and his deep voice. Following a jury trial in August of 1986, petitioner was convicted of both charges. He was adjudicated as a prior felony offender and sentenced to concurrent indeterminate terms of incarceration of eight to sixteen years on both counts. On March 7, 1988, the Appellate Division, Second Department, affirmed the conviction. 138 A.D.2d 418, 525 N.Y.S.2d 592. Leave to appeal to the New York Court of Appeals was denied on June 21, 1988. 72 N.Y.2d 865, 532 N.Y.S.2d 515, 528 N.E.2d 905. This petition followed.

Petitioner sets forth six grounds in support of his petition: (a) that the trial court's identification charge did not give the jury the guidance required in a pure identification case and was biased in favor of the People; (b) that the prosecutor's references in summation to matters not in evidence deprived him of a fair trial; (c) that he was deprived of his constitutional right to effective assistance of counsel; (d) that the identification of petitioner as the intruder was not proven beyond a reasonable doubt; (e) that the possibility of mistaken identification revealed by a witness, and the intimidation of that witness by the threat of prosecution for perjury, cast doubt upon the conviction; and (f) that the sentence was harsh and excessive. Petitioner has exhausted the remedies available to him in the state court system, as required in a federal habeas proceeding. *See* 28 U.S.C. § 2254(b); *see also Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

## DISCUSSION

### I. PROCEDURAL DEFAULT

■ Although a claim is exhausted in the state courts, a petitioner is neverthe-

2. "Tr." refers to the trial transcript.

less procedurally barred from seeking habeas corpus relief on the basis of a claim not properly preserved in state court unless he provides an adequate justification excusing this error and demonstrates that prejudice has resulted from the alleged violation for which relief is being sought. *Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977), *Reed v. Ross,* 468 U.S. 1, 11, 104 S.Ct. 2901, 2907–08, 82 L.Ed.2d 1 (1984) (citations omitted); *Forman v. Smith,* 633 F.2d 634, 638–43 (2d Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981). Simply put, a claim not properly preserved is barred from consideration by a federal habeas court absent a showing of "cause and prejudice." *Wainwright,* 433 U.S. at 87, 97 S.Ct. at 2506.

■ Respondent argues that petitioner herein is procedurally barred from seeking habeas review of the claims involving the trial court's charge and the prosecutor's closing remarks. Respondent correctly asserts that petitioner's trial counsel did not object to either.[3] Thus, respondent concludes that habeas review may not be had for these claims because they were not properly preserved for appeal. *See* N.Y.Crim.Pro.Law § 470.05 (McKinney 1983 and Supp.1991).

In *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Supreme Court declared that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* at 263, 109 S.Ct. at 1043 (quoting *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2638–39, 86 L.Ed.2d 231 (1985)); *see also Rollins v. Leonardo,* 938 F.2d 380, 381 (2d Cir.1991) (citation omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 944, 117 L.Ed.2d 114 (1992). However, the Supreme Court has explained

that the *Harris* presumption "applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991).

In the instant case, the last state court to render a judgment on the issues presented was the appellate division. In fact, the appellate division was presented with all of the constitutional issues currently asserted.[4] In its decision, that court addressed only: (1) whether petitioner's guilt was proven beyond a reasonable doubt; (2) whether petitioner received effective assistance of counsel at trial; and (3) whether the sentence imposed was excessive. The court concluded its decision by stating, "We have considered [petitioner's] remaining contentions and find that they are either unpreserved for appellate review or without merit." Opinion of the Appellate Division, Second Department, Ind. No. 139/86, March 7, 1988 at 2.

The appellate division failed to delineate whether either of two issues in question was meritless or, in fact, procedurally barred. Therefore, this Court finds that the appellate division did not "clearly and expressly" rely on procedural default grounds to dismiss petitioner's improper jury instruction and prosecutorial misconduct claims. *See Harris,* 489 U.S. at 263, 109 S.Ct. at 1043; *see also Rosenfeld v. Dunham,* 820 F.2d 52, 54–55 (2d Cir.) (finding that the Appellate Division, Second Department's determination that defendant's remaining claims did not merit reversal did not entitle the district court to assume that the state court's decision rested on a procedural default), *cert. denied,* 484 U.S. 968, 108 S.Ct. 463, 98 L.Ed.2d 402 (1987). Ac-

---

**3.** Petitioner's trial attorney did request a missing witness charge. The trial court denied that request because the missing witnesses were not eyewitnesses to the incident. This cannot be said to even touch upon the ground petitioner raises before this Court.

**4.** For purposes of this petition, petitioner relies on the brief which was submitted to the appellate division in his criminal appeal when he was represented by counsel.

cordingly, this Court must reach the merits of those claims.

## II. THE MERITS OF PETITIONER'S CLAIMS

### A. *Claim of Improper Jury Charge*

█ Petitioner asserts that the trial court's charge did not give the jury the guidance necessary in an identification case and was biased in favor of the People. To this end, although the jury was instructed more than ten times throughout the charge that in order to find petitioner guilty, the People must have proven his guilt beyond a reasonable doubt, petitioner argues that the charge, taken as a whole, diluted this burden.

To substantiate his claim, petitioner argues that the trial court's statement, "It is not essential that the witness who testified be free from doubt, as to their [sic] correctness of his or her statements[,]" Tr. 176, could have led the jury to understand that the identifying witness, who also testified at trial, need not be certain of his identification. Additionally, petitioner contends that in instructing the jury about how to evaluate identification testimony, the trial court gave only a partial list of the factors enumerated in New York's pattern jury instructions and, further, tailored them to conform to the testimony of the two witnesses:

> Now in appraising the identification testimony of any witness, you should consider, are you convinced that he or she had the capacity and adequate opportunity to hear and observe *the offender there, Douglas Player;* whether he or she had an adequate opportunity, to *hear and* observe the offender as charged at the time of the offense will be affected by such matters as how long or how short a time was available, how far or close was the individual to the witness? How good were the lighting conditions? Whether the witness had occasion to see *and hear or know the alleged person in the past.*

Tr. 177 (emphasis provided by petitioner). Petitioner asserts that the trial court failed to mention such things as the mental and emotional state of the witnesses during the crime, and the fact that there was little or no other evidence linking petitioner to the crime. In sum, petitioner contends that the charge was biased in favor of the People.

"A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right." *United States ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir.1974) (citing *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) (additional citations omitted), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975)). To warrant the granting of habeas corpus relief, "it must be established not merely that the instruction [was] undesirable, erroneous, or even 'universally condemned' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp,* 414 U.S. at 146, 94 S.Ct. at 400.

Whether or not the charge in question would be reversible as a matter of state law, the Court finds that the errors that petitioner alleges are not of constitutional proportions. The trial judge's charge did not deprive petitioner of his fundamental right of due process of law. It is to be noted that, although petitioner's trial counsel requested an identification charge, Tr. 164, he did not request that a specific charge be used, nor, as stated, did he object to the charge at the time of trial. *See Malley v. Manson,* 547 F.2d 25, 28 (2d Cir.1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1335, 51 L.Ed.2d 598 (1977). Therefore, habeas relief is denied on this ground.

### B. *Claim of Prosecutorial Misconduct*

█ Petitioner argues that during summation the prosecutor referred to matters that were not in evidence, thereby depriving petitioner of a fair trial. On direct examination, Bordies and Wiesbecker testified that they recognized petitioner by his voice and build. Petitioner contends that the prosecutor improperly referred during summation to identifying an individual by "the way he moves." Further, peti-

tioner contends that the prosecutor's reference to testimony about petitioner leaving the scene of the incident in "the orange car" was based on hearsay statements since Bordies and Wiesbecker testified only to seeing petitioner leave the scene in that car after they had returned from the police station.

■ Although it is true that during summation a prosecutor may not refer to matters that are not in evidence, *People v. Ashwal*, 383 N.Y.S.2d 204, 206, 39 N.Y.2d 105, 347 N.E.2d 564 (Ct.App.1976) (citations omitted), habeas corpus relief is not available unless the allegedly improper prosecutorial statements were so fundamentally unfair as to deny petitioner a fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Malley*, 547 F.2d at 28 (citations omitted). In the case at bar, the alleged errors do not amount to a deprivation of petitioner's due process rights.

First, the State presented a most compelling case against petitioner. Both eyewitnesses were able to positively identify petitioner from previous encounters with him. In fact, Bordies testified that he had known petitioner for more than ten years, Tr. 19–20, and that he recognized petitioner by his distinctive voice.[5] Tr. 33. Wiesbecker testified that she recognized him by his voice and ski suit. Tr. 83. In addition, both witnesses gave nearly identical descriptions of petitioner and the events underlying the incident.

In contrast to this substantial evidence of guilt, any prejudice resulting from the alleged errors was *de minimus*. The reference to "the orange car" appeared for the first time during the direct examination of Bordies. Tr. 34. However, petitioner's counsel did not object,[6] and, in fact, explored the issue when cross-examining Bordies. Wiesbecker, too, was questioned about it on cross-examination. Tr. 90–91. Accordingly, the prosecutor's reference to the car during summation was harmless

error, if it were an error at all. Moreover, the prosecutor's comments about the ways in which a person can be identified were fair given the evidence that established that petitioner was previously known to Bordies and Wiesbecker.

The Supreme Court has declared:

Isolated passages of a prosecutor's arguments, billed in advance to the jury as a matter of opinion not of evidence, do not [have a profound effect on the jury]. Such arguments, like all closing arguments of counsel, are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear.

*Donnelly*, 416 U.S. at 646–47, 94 S.Ct. at 1873. Thus, the totality of the circumstances leads this Court to conclude that the prosecutor's closing remarks were not prejudicial. Accordingly, the Court rejects this argument.

### C. Claim of Ineffective Assistance of Counsel

It is well established that an indigent defendant is guaranteed the right to counsel. U.S. Const. amend. VI; *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); N.Y. Const., art. I, § 6; *People v. Koch*, 299 N.Y. 378, 87 N.E.2d 417 (1949). The Supreme Court has recognized that the right to counsel guaranteed under the Sixth Amendment is "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970).

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-prong test that a petitioner must meet to sustain a claim of ineffective assistance. The petitioner must first show that counsel's performance was deficient and, second, that

---

5. It is to be noted that on recross examination, Bordies stated that he "could have been mistaken." Tr. 56.

6. It is appropriate for this Court to consider both the absence of contemporaneous objections and requests for cautionary instructions. *Malley*, 547 F.2d at 28.

"the deficient performance prejudiced the defense," *id.* at 687, 104 S.Ct. at 2064, to the extent that petitioner was deprived of "a fair trial, a trial whose result is reliable." *Id.* It is to be noted that the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

Petitioner fails to meet either prong. Petitioner asserts that the representation by his assigned counsel was ineffective and unmeaningful. He attempts to support his contention on the grounds that defense counsel failed to object to a hearsay statement made by one of the eyewitnesses, elicited a repetition of the hearsay statement by his own questioning, failed to object to the prosecutor's use of the statement in summation, and failed to request an expanded identification charge or to object to the charge as given.

1. Claim that Defense Counsel Failed to Object to Hearsay Statements

■ Petitioner claims that defense counsel improperly allowed into evidence hearsay statements that informed the jury that an orange station wagon fled the scene of the burglary. As noted, neither Bordies nor Wiesbecker testified to seeing the intruders leave the house immediately after the incident in an orange station wagon. On direct examination, Bordies testified: "I ran towards [Wiesbecker], seen if she was all right, and that's when my friend Derrick [Porter] walked up ... and [I] told my friend Derrick [what happened], and *Derrick said,* 'Yeah, I seen an orange station wagon leave.' " Tr. 34–35 (emphasis supplied). Petitioner argues that the defense counsel's failure to object to the admission of this hearsay evidence deprived him of effective assistance of counsel.

Errors made by defense counsel must be viewed in light of "all the circumstances and in view of counsel's perspective at the time of the alleged error." *Shaw v. Scully,* 654 F.Supp. 859 (S.D.N.Y.1987) (citing *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at

2065). Moreover, the Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential ... [because] [i]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted).

Petitioner concedes that at the time the hearsay statement was made, trial counsel "probably surmised" that an objection to the hearsay would be fruitless because he could have reasonably believed that Porter was going to be called as a witness.[7] Appellant's Brief at 21. Petitioner also concedes that trial counsel's failure to object to the statements in question was "excusable." *Id.* The Court agrees with petitioner's characterization and finds that trial counsel's failure to object to the statements in question was not professionally unreasonable in light of his perspective at the time.

Even assuming, *arguendo*, that trial counsel's conduct was somehow deficient, petitioner does not demonstrate that, absent the errors, the jury would have had a reasonable doubt as to his guilt. *See Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068–69. The evidence adduced at trial shows that the victims knew petitioner prior to the incident, immediately recognized him, and, that when petitioner returned later that evening to Bordies' house, he was carrying a ski mask. Defense counsel's failure to object to the "hearsay evidence" during Bordies' testimony and during the prosecutor's summation did not "prejudice" petitioner in any way that would cause this Court to conclude that counsel was ineffective. Thus, the Court determines that petitioner has not demonstrated that the admission of these statements affected the result of the proceedings.

2. Claim that Defense Counsel Failed to Request the Proper Jury Charge

■ Petitioner additionally asserts that defense counsel's failure to request an ex-

---

7. The prosecutor had stated, in her opening, that the car, which is the subject of the testimony in question, was recognized "in the burglary and robbery." Tr. 14.

panded identification charge and to object to the charge as given demonstrates counsel's lack of preparation. However, after an extensive review of the jury charge, this Court finds that the instructions were proper. *See supra* IIA.

In *Strickland*, the Supreme Court stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. In this case, trial counsel conducted a *Huntley* hearing, which resulted in the suppression of statements made by petitioner. During trial, counsel cross-examined the prosecution's witnesses, attempted to weaken Bordies' testimony by establishing that he could have been mistaken in his identification of the petitioner, made numerous objections, made motions to dismiss, made a request to charge, and gave a closing address to the jury. The trial record clearly shows that defense counsel's conduct before and during trial comported with the adversarial nature of a criminal proceeding and that counsel provided adequate, effective, and meaningful assistance.

In sum, this Court finds that defense counsel provided petitioner with effective assistance of counsel as guaranteed by the Sixth Amendment. Accordingly, petitioner's argument that he was denied effective assistance of counsel is rejected.

D. *Claim of Insufficiency of the Evidence*

■■■ Petitioner asserts that the evidence adduced at trial was insufficient to prove him guilty beyond a reasonable doubt. Petitioner contends that the witnesses' observations were unreliable due to poor lighting, surprise, and fright. To bolster his argument, petitioner points out that on re-cross examination, Bordies admitted that he "could have been mistaken" that petitioner was the burglar. Tr. 56.

**8.** Bordies had testified before the Grand Jury that he was certain that petitioner was the bur-

■■■ A federal court will not grant habeas relief to a state prisoner challenging his conviction for insufficient evidence if "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362, 92 S.Ct. 1620, 1624–25, 32 L.Ed.2d 152 (1972)). Thus, once a jury has found a defendant guilty, a habeas court may "impinge[ ] upon 'jury' discretion only to the extent necessary to guarantee the fundamental principles of due process of law." *Id.* (footnote omitted).

A review of the record in this case supports the verdict and, moreover, clearly satisfies due process requirements. The primary evidence against petitioner was the victims' identification of petitioner's voice, build, and clothes. Indeed, Wiesbecker testified that she had seen him in the same clothing two weeks prior to the burglary. Tr. 67–68. Moreover, petitioner returned to the scene holding a ski mask identified as that worn by the intruder. It is also significant that a prosecutor's burden is to prove a defendant guilty beyond a reasonable doubt, not beyond all doubt. *See* N.Y.Crim.Pro.Law § 70.20 (McKinney 1981 & Supp.1991).

Viewing the evidence under the standard enunciated by the Supreme Court, *see Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, *see also Johnson*, 406 U.S. at 362, 92 S.Ct. at 1624–25, the Court finds that petitioner was not denied due process of law and this claim is without merit.

E. *Claim that A Threat Against Bordies of Prosecution for Perjury Casts Doubt Upon Petitioner's Conviction*

■■■ Petitioner makes the unsupported allegation that, in a conversation outside the courtroom, the prosecutor threatened to charge Bordies with perjury if he testified that he could have been mistaken in identifying petitioner as the intruder.[8] Indeed, petitioner's counsel brought this is-

glar.

sue to the trial judge's attention. The record clearly reflects that the prosecutor's remarks were properly limited to informing Bordies that he would be subject to perjury charges if he were to *lie* on the witness stand about his recollections. Tr. 59–62. In any event, petitioner can claim no harm since Bordies did testify, on recross examination, that he "could have been mistaken" in identifying petitioner. Tr. 56.

It is well settled that a habeas corpus petitioner has the burden of proof. Petitioner fails to sustain this burden. *Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024–25, 82 L.Ed. 1461 (1938) (footnote omitted); *Polizzi v. United States*, 926 F.2d 1311, 1321 (2d Cir.1991) (citation omitted). Therefore, habeas relief must be denied on this ground.

**F.** *Claim of Cruel and Unusual Punishment*

 The petitioner asserts that his sentence was harsh and excessive. The concurrent sentences of eight to sixteen years imposed by the trial court are within the maximum allowed by state law. The imposition of a sentence within the permissible range prescribed by law does not "present a constitutional question necessary for habeas corpus reversal." *Underwood v. Kelly*, 692 F.Supp. 146, 152 (E.D.N.Y.1988) (citations omitted), *aff'd*, 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *United States ex rel. Miller v. LaVallee*, 320 F.Supp. 452, 455 (E.D.N.Y.), *aff'd on other grounds*, 436 F.2d 875 (2d Cir.1970) (per curiam), *cert. denied*, 402 U.S. 914, 91 S.Ct. 1367, 28 L.Ed.2d 657 (1971); *see also Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948).

### CONCLUSION

For the aforementioned reasons, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

SO ORDERED.