George W. BATES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 21434.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 23, 1968.

Decided Dec. 13, 1968.

Mr. Nelson Deckelbaum, Washington, D. C. (appointed by this court) for appellant.

Mr. Robert S. Bennett, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and BURGER, Circuit Judge.

BURGER, Circuit Judge:

Appellant was convicted on two counts of housebreaking, 22 D.C.Code 1801, and two counts of assault with a dangerous weapon, 22 D.C.Code 502, and appeals on the ground that his identification by one of the complaining witnesses was the result of an unnecessarily suggestive confrontation under Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

The complaining witnesses, two women, established at trial that at approximately 11:30 P.M. on July 12, 1966, Appellant allegedly entered their 3rd floor apartment on New Hampshire Avenue, N.W. One woman had retired at 11:00 P.M. and her roommate at approximately 11:30. Shortly thereafter, the latter noticed a figure in their living room and asked who was there; this awakened the other woman. The intruder responded: "Don't move or I'll shoot." The intruder entered the bedroom which had no lights on but was well illuminated by a street light which was shining into the bedroom, and ordered one of the women to get into her bed and the other to cover her head with the sheet. At knife point he committed indecent assaults on the second woman which continued until the victim began to scream; she then threw the attacker's knife out an open window. The attacker at once fled. The screams attracted a police officer who observed a man running from the apartment. The officer ordered him to halt but was unable to apprehend him.

This man was then observed by two other officers a short distance from the scene; they later positively identified him as Appellant and specifically noticed a "white cloth wrapped around his hand." This coincided with the complaining witness' statement that her assailant "had a bandage on his left hand." These officers were likewise unable to overtake and apprehend the fleeing suspect, although they passed this information to still another officer, Bloodworth, who was patrolling the area in a scout car. The latter testified that he had seen a man corresponding to the description of the suspect walking through an alley earlier and that his attention had been drawn to "what appeared to be a white bandage—handkerchief" on his left hand. Moments later, at approximately 11:45 P.M., Bloodworth came upon Appellant on the porch of a nearby house at which time he took him into custody.[1] At the time of his arrest Appellant did not have the white handkerchief or bandage around his hand.

Appellant was immediately returned to the vicinity of the crime and placed in a patrol wagon. Shortly after 12:00, at most 30 minutes after the attack, the complaining witnesses were asked to come down to the street in front of their apartment and view the Appellant who was the sole occupant of the vehicle. One of the girls could not positively identify him although she said he had the same general appearance as the intruder. The other girl, who had a much better view of the assailant[2] during his close range advances and contact with her and whose identification was introduced at trial, specifically identified

1. When approached by Officer Bloodworth Appellant claimed that he had been there about an hour. The owner of the house, however, testified he had arrived about five minutes before the officer, and was "puffing", "blowing" and "perspiring."

2. The witness who was unable to positively identify Appellant had spent much of the time that the intruder was in the apartment under the covers of her bed where the assailant had directed her to remain while he made his advances to her roommate.

Appellant as her attacker. During the attack, this complainant had seen the assailant under the light of a small firelight in an adjoining room and the illumination from a street lamp which "was shining fairly brightly into the bedroom" through an open window. She therefore had a clear opportunity to observe his features, and was able to identify him as her assailant even though he did not have the handkerchief or bandage on his hand when he sat in the back of the patrol wagon.

■ There is no prohibition against a viewing of a suspect alone in what is called a "one-man showup" when this occurs near the time of the alleged criminal act;[3] such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. The rationale underlying this is in some respects not unlike that which the law relies on to make an exception to the hearsay rule, allowing spontaneous utterances a standing which they would not be given if uttered at a later point in time. An early identification is not error. Of course, proof of infirmities and subjective factors, such as hysteria of a witness, can be explored on cross-examination and in argument. Prudent police work would confine these on-the-spot identifications to situations in which possible doubts as to identification needed to be resolved promptly; absent such need the conventional line-up viewing is the appropriate procedure.

■ Our review of the circumstances surrounding the apprehension of Appellant and the police conduct which led to his identification satisfies us that the claim that Appellant was denied due process of law is without merit; there was no "substantial likelihood of irrep-

arable *misidentification.*" To the contrary, the police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. Wise v. United States, 127 U.S. App.D.C. 279, 383 F.2d 206 (1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968); Walker v. United States, No. 20,309 (D.C. Cir., June 17, 1968).[4]

Affirmed.

BAZELON, Chief Judge, concurs in the result only.

---

3. Justice Douglas, although dissenting to the affirmance of a state court conviction in Biggers v. Tennessee, readily conceded: "Of course, due process is not always violated when the police fail to assemble a lineup but conduct a one-man showup." 390 U.S. 404, 408, 88 S.Ct. 979, 981, 19 L.Ed.2d 1267 (1968).

4. This court recently recognized the propriety of early identifications. Identification of the Appellant, alone, by the victim on the street shortly after the attack, followed by a hospital emergency room confrontation two hours later by another victim was upheld in McDonald v. United States, No. 21,872 (D.C.Cir., Dec. 4, 1968) (unreported).