Henry **HARRIS**, Plaintiff-Appellant,

v.

Hayden J. **DEES**, Warden, Louisiana State Penitentiary, Defendant-Appellee.

No. 26823.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1970.

---

Henry Harris pro se.

James M. Petersen, New Orleans, La. (Ct.Apptd.) for plaintiff-appellant.

George A. Bourgeois, Asst. Atty. Gen., Jack E. Yelverton, Asst. Atty. Gen., Baton Rouge, La., for defendant-appellee.

Before GEWIN, COLEMAN, and DYER, Circuit Judges.

COLEMAN, Circuit Judge.

After a full evidentiary hearing, the petition of Henry Harris for a writ of habeas corpus was denied on August 9, 1968. Harris, who is now serving a five year sentence in state prison, asserts (1) that he was ineffectively represented by counsel (2) that illegal evidence was admitted against him (3) that his confrontation with the victim was so suggestive of guilt that the identification thus obtained violated due process and (4) that the guilty plea of his co-defendant in the presence of the jury which convicted him rendered his trial unfair.

Shortly after 2 o'clock A.M. on April 21st Henry Harris and a certain Armsy Smith were walking down St. Thomas Street in New Orleans. A police car approached them from the rear and stopped them for questioning. The officers in the car testified that they stopped Harris and his companion because under surveillance they began to walk faster and "act nervous and suspicious".

The officers inquired into the identity of the men and asked whether they had any visible means of support. When asked whether he had a job, Harris told the officers that he was employed at the Schlitz Brewing Company. Unsatisfied as to the means of support of the men and their presence on the street at that hour, the officers were about to place them under arrest for vagrancy.

At about this time a call came over the police radio reporting a robbery on Jackson Avenue about two blocks away. The description of the robbers announced on the radio fit Harris and Smith. They were accordingly placed under arrest on a tentative charge of vagrancy and taken to the scene of the crime.

Upon arrival at the scene, the victim, who knew the attackers and had been drinking with them, identified them as the robbers. They then were placed under arrest for robbery and were advised of their constitutional rights.

At arraignment on May 10, 1966, Mr. Milton Masinter was appointed to represent both Smith and the petitioner. Masinter testified that he consulted with his clients on May 16, May 18, May 31, and June 15. Further, Masinter testified that he had every opportunity to consult with the clients and that more consultation would not have been helpful.

The same bill of information was filed against both petitioner and Armsy Smith and they were represented by the same attorney. On the day of trial Smith changed his plea to guilty. Harris complains that he was denied a fair trial because the jury that convicted him was allowed to see and hear his co-defendant plead guilty. Cf. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

■ The record does not support the assertion that the jury was already impaneled and seated in the box. The proof clearly shows that the jury was not yet impaneled when Smith pleaded guilty. Both the trial judge and Harris' appointed counsel testified that the jury had not been selected. At the time of the guilty plea there were approximately seventy-five prospective jurors in the courtroom waiting to be apportioned among the five cases set for the day. When Smith's guilty plea was heard, appellant Harris was outside the courtroom. The only possible claim of prejudice arises from the fact that Mr. Masinter represented both defendants and

the cases were called consecutively. However, any inference of prejudice is dispelled by the fact that the jury which convicted Harris was not selected, impaneled or seated at the time Smith pled guilty.

Harris further requests relief from his conviction on the ground that he was ineffectively represented by counsel in three particulars: (1) counsel did not spend adequate time consulting with Harris (2) counsel did not file a motion to suppress the evidence allegedly seized illegally and (3) counsel did not file a motion for severance.

■ Mr. Masinter was appointed to defend Harris at the arraignment on May 10, 1966, and conducted four interviews with Harris in the next two months. In view of the nature of the case, and the trial judge's testimony that Masinter did "everything humanly possible", Harris' representation was more than adequate. Williams v. Beto, 5 Cir., 1965, 354 F.2d 698, 702; Worts v. Dutton, 5 Cir., 1968, 395 F.2d 341, 343.

■ Failure to move for separate trials for the two defendants was thoroughly justified since co-defendant Smith had informed counsel that he intended to plead guilty. Although failure to move for separate trials might be defensible as a trial tactic, even if both defendants had been tried together, Frost v. United States, 1962, 111 U.S.App.D. C. 414, 298 F.2d 328, here we do not reach the question since Harris was the only defendant in the case when it was tried.

■ Counsel was justified in not moving to suppress the wallet seized by police. Shortly before Harris was arrested he discarded the stolen wallet. Immediately after Harris' identification by the victim the police retraced Harris' steps to the point of capture and found the wallet on the front porch of a house. Since Harris' conduct supports the inference that he intended to throw away the wallet, he cannot in turn object to the seizure of an item which he denies

ever having seen. United States v. Cowan, 2 Cir., 1968, 396 F.2d 83.

Several additional factors belie any allegation of ineffectiveness of counsel. First, Mr. Masinter was no novice; he had over six years experience in criminal law. Poteat v. Peyton, W.D. Va., 1967, 270 F.Supp. 220. Second, in testimony at the habeas hearing the state trial judge commended counsel for making all necessary objections and for strenuously urging the defenses of illegal arrest and illegal use of evidence. Bouchard v. United States, 9 Cir., 1965, 344 F.2d 872.

■■■■ Harris next attacks on due process grounds the confrontation with the victim when Harris and Smith, under arrest, were returned to the scene of the crime. Since the confrontation occurred before June 12, 1967, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, is inapplicable. Thus the confrontation is to be judged by the due process standards articulated in Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199 (1967), and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. There the standard is whether the confrontation is "so unnecessarily suggestive and conducive to irreparable mistaken identification" that it violates due process. Looking at the "totality of circumstances" the *Stovall* court concluded that the urgency of obtaining an identification before the sole surviving witness died overrode any possible due process violation. *Id.*, 388 U.S. at 302, 87 S.Ct. 1967.

Cases involving confrontations between the victim and suspects immediately after the crime have not found due process violations where factors reducing the chance of misidentification have been present. Perhaps the leading case is Bates v. United States, 1968, 132 U. S.App.D.C. 36, 405 F.2d 1104. There a housebreaker wearing a distinctive white bandage was captured thirty minutes after the crime following a chase involving three separate police officers. In an opinion by Chief Judge [now Chief Justice] Burger, the court approved a one man show up near the scene of the crime on the theory that early identification may in some circumstances insure accuracy. Prompt identification was justified by analogy to the spontaneous declaration exception to the hearsay rule. Finally, the court felt that, on balance, the consequences of its decision were healthy in that early identification may lead to the release of an innocent suspect and allow the police to resume the search. *Id.* at 1106.

While accepting *Bates'* premise of the possibility of greater accuracy in prompt identification, other courts have explored circumstances in which the *Bates* principle can operate. In Marden v. Purdy, 5 Cir., 1969, 409 F.2d 784, a suspect described as wearing a blue windbreaker and tennis shoes was arrested approximately 500 yards from the scene of the crime and taken back for identification. The court found no objection to the show up since the distinctive description left little room for error. In other cases where witnesses have said they made a studied attempt to study the face of a robber, United States ex rel. Rutherford v. Deegan, 2 Cir., 1969, 406 F.2d 217, or where witnesses have had several minutes to observe, United States ex rel. Williams v. LaVallee, 2 Cir., 1969, 415 F.2d 643, courts have allowed the nearly contemporaneous one man show ups.

The thrust of these recent cases was approved in United States v. Venere, 5 Cir., 1969, 416 F.2d 144. There a ticket seller at a race track identified two men who had passed counterfeit bills after they had been apprehended on the ticket seller's distinctive description. In upholding the conviction the court warned that the police may not circumvent the need for a formal line up by keeping the arrestee away from the station house, even though they may contemporaneously confront the victim with the accused. Finally, the court added that the confrontation was not shown to have

contributed to the ability of the victim to identify the suspect at trial later.

 Finally, after Harris had been detained on a dark side street at 2 A.M. the radio report came of a robbery outside a bar on Jackson Avenue. The broadcast description of the robbers was precise and distinctive. The suspects had told the police that they had been in a bar on Jackson Avenue. The officers committed no trespass on due process when they declined to release these suspects. The existence of probable cause was clear and unmistakable. That the officers might originally have intended to detain the suspects for some other reason (the validity of which we do not decide) would be no reason to release a couple of clearly described robbers.

The judgment of the District Court is Affirmed.