**UNITED STATES of America ex rel. Charles BURKE, Petitioner-Appellant,**

v.

**STATE OF ILLINOIS et al., Respondents-Appellees.**

**No. 72–1176.**

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1972.

Decided July 28, 1972.

Frederick F. Cohn, Chicago, Ill., for petitioner-appellant.

Jayne A. Carr, William J. Scott, Atty. Gen., Chicago, Ill., for respondents-appellees.

Before DUFFY, Senior Circuit Judge, PELL, Circuit Judge and DURFEE,* Associate Judge.

DUFFY, Senior Circuit Judge.

This is an appeal from the denial of a petition for a writ of habeas corpus by the District Court. Appellant Burke and one Robert Keeler were, in 1967, members of the Police Department of the City of Chicago. They were charged with two counts of theft and one count of bribery by the Cook County Grand Jury. After a bench trial, both men were found guilty of the charged offenses, and each was sentenced to a prison term of one year and one day.

The Appellate Court of Illinois, First District, confirmed the conviction and sentence.[1] The Illinois Supreme Court denied leave to appeal. The Supreme Court of the United States denied a petition for a writ of certiorari.

The charges against appellant were based on a claim of Robert Thomas who was manager of a gasoline filling station in Chicago. Thomas' testimony showed that on the morning of September 7, 1967, he was driving his automobile on Roosevelt Road in Chicago, Illinois. He was stopped by two policemen who had been in a squad car parked at the side of the road. One of the policemen directed Thomas to get into the rear seat of the squad car.

The officer, later identified as Officer Burke, told Thomas he was driving with a revoked license. This was not, in fact, true. Burke then searched Thomas'

---

* Senior Associate Judge James R. Durfee of the United States Court of Claims is sitting by designation.

1. People v. Burke and Keeler, Ill.App., 266 N.E.2d 547 (1970), cert. den. 404 U.S. 1000, 92 S.Ct. 558, 30 L.Ed.2d 552 (1971).

car and returned stating to Thomas he did not have a City Sticker and said "You can get into a lot of trouble about this." He then asked Thomas how much money he had on him. Thomas answered he had about $75. Burke told him to drop the money in the back seat of the squad car. Thomas complied.

The officers then instructed Thomas to return to his gas station and obtain additional money there. At the station, Thomas produced $200 additional which was handed to the officers. Later, the officers accompanied Thomas to his home and then to his bank where he drew out $600 from his personal account giving same to the officers. The officers then drove Thomas back to the gas station instructing him to restore the $200 taken therefrom in order not to involve the oil company.

The following day, Thomas contacted the Internal Inspections Division of the Chicago Police Department. He gave a statement to the investigating officer with respect to the officers' actions. He then was shown "50 or 60 or more"[2] photographs of police officers. He selected one as Officer Burke. He also selected one which he tentatively identified as Officer Keeler.

Two days after the offense, Thomas viewed a lineup consisting of 18 police officers in uniform. He did not identify Officer Burke. At this lineup, Burke was wearing glasses. However, it appears from trial testimony that at the time the offenses were committed, Burke was not wearing glasses.

After the lineup, Thomas was taken to a room occupied by Burke, Keeler and the investigating officer. Thomas there readily identified Burke.

At the trial, defense counsel, on cross examination, brought out the circumstances of the pretrial investigation. However, there was no motion to suppress the identification.

The testimony at the trial disclosed that Burke was the one who carried on the conversation with Thomas and that during a period of one and a half hours, Thomas' attention was drawn particularly to Officer Burke.

Thomas made a courtroom identification of both Burke and Keeler. No objection was made to the courtroom identification by defense counsel.

■ The principal issue here is whether any of the identification procedures used were "so unnecessarily suggestive and conducive to irreparable mistaken identification" so as to deny a defendant due process of law in violation of his Fourteenth Amendment right. This must be measured by the totality of the circumstances surrounding the alleged due process violation. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Palmer v. Peyton, 359 F.2d 199 (4 Cir., 1966).

■ Petitioner argues on appeal that the suggestive identification procedure used by the investigating officer, namely the showup of him and co-defendant Keeler, is unnecessarily suggestive and constitutionally impermissible. The petitioner contends such exceptions to the prohibition against suggestive showups apparent from Stovall, supra, and Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968), are not apparent from the facts of the present case. Therefore, defendant claims the in-court identification of his person was inadmissible.

Ordinarily, an in-court identification arising from such a suggestive showup would itself be constitutionally dubious. Yet, as our Circuit stated recently in Dozie v. Cady, (No. 71–1520, May 31, 1972) with respect to pretrial identification:

"It is settled that where there has been a pretrial illegal identification the government must establish by clear and convincing evidence that the subsequent in-court identification is not tainted by the prior illegality, but is of independent origin. Wade at 240 [United States v. Wade, 388 U.S.

2. Record, pages 69–70.

218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)]; Gilbert v. California, 388 U.S. 263, 272 [87 S.Ct. 1951, 18 L.Ed. 2d 1178] (1967); Mason v. United States [134 U.S.App.D.C. 280], 414 F. 2d 1176, 1182 (D.C.Cir., 1969); United States v. Ganter, 436 F.2d 364, 371 (7 Cir., 1970). The question then is whether the record here discloses an independent basis for the in-court identification of defendant." See also Frazier v. United States, 136 U.S.App. D.C. 180, 419 F.2d 1161 (1969).

We feel great weight should be placed upon the photographic identification of petitioner made by Robert Thomas on the day after the theft and bribery. Thomas examined some 50 or 60 photographs of police officers which were furnished by the Internal Inspections Division of the Chicago Police Department. From this group of photographs, Thomas unequivocally identified Burke as one of the officers involved in the theft and bribery and identified two other officers as tentatively being the other officer (one of which, in fact, was Keeler).

Also pertinent is the fact that Thomas was forced to ride in the patrol car with the officers while they were collecting his money for a period of approximately one and one-half hours. During this time, the testimony at trial indicates that Burke gave the commands and talked with Thomas.

Although Thomas did not identify Burke in a line-up of 18 uniformed officers, it must be considered that at that time Burke was wearing glasses, whereas he was not doing so when he had the conversations with Thomas.

Shortly thereafter, when Thomas was taken into a room occupied by Burke, Keeler and an investigating officer, Thomas did promptly identify Burke.

Upon reviewing the totality of the circumstances surrounding the subsequent in-court identification of the petitioner, we are of the opinion that the positive photographic identification prior to the showup, coupled with the hour and one-half that Thomas was seated in the rear seat of the patrol car observing Burke during the illegal activities, constitutes a sufficient independent basis to justify admission of the in-court identification. Furthermore, there is no allegation that the photographic identification procedure used was impermissibly suggestive where 50 to 60 photos were used. Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

■ ■ Appellant Burke argues that the District Court erred in failing to hold an evidentiary hearing in this case. However, such a hearing is required only where the constitutional issue has not been fully or fairly litigated in the state court or the state determination has not been fairly supported by the record. (Title 28 U.S.C. § 2254(d)). Counsel for Burke in the state trial court never raised the issue of suggestiveness or independent basis either by motion to suppress or by objection to the courtroom identification of Burke. Nevertheless, the facts and circumstances of the pretrial examination procedure were elicited upon cross examination of the complaining witness and are sufficiently preserved in the record in order to properly determine the issues of suggestiveness and independent basis without holding an evidentiary hearing.

We hold there was no need for an evidentiary hearing before the District Court, and we affirm the judgment of the District Court. The denial of the petition for a writ of habeas corpus is

Affirmed.