In his sole assignment of error, appellant argues that he was denied effective assistance of counsel because trial counsel failed to file a pretrial motion to suppress the out-of-court identification of appellant. Appellant contends that the identification of appellant shortly after the burglary: to wit, a "one-man show up," was impermissibly suggestive and violated his due process rights. The record shows that appellant was the only person shown to Rickett and that there were five police cruisers in the vicinity at the time.
To decide appellant's claim of ineffective assistance of counsel, we must apply the two-tier test of Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. First, the defendant must show that his counsel's actions were outside the wide range of professionally competent assistance. Second, the defendant must demonstrate that he was prejudiced by reason of counsel's actions.Id. at 687, 104 S.Ct. 2064. Trial counsel's performance will not be deemed ineffective unless the defendant shows that "counsel's representation fell below an objective standard of reasonableness," id. at 688, 104 S.Ct. at 2064, and that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Statev. Bradley (1989), 42 Ohio St.3d 136, 143, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy and falls within the wide range of reasonable professional assistance.Id. at 142.
In order to suppress an out-of-court identification, the court must find that the procedure employed was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Neil v. Biggers (1972), 409 U.S. 188,198-199, 93 S.Ct. 375, 381-382. "While the practice of showing suspects singly to witnesses for identification is widely condemned, whether such procedure violates due process depends on the totality of the surrounding circumstances." Zanesville v.Osborne (1992), 73 Ohio App.3d 580, 586, citing Stovall v. Denno
(1967), 388 U.S. 293, 87 S.Ct. 1967.
Reliability is the linchpin in determining the admissibility of identification testimony, and even if the identification procedure itself was suggestive, so long as the challenged identification itself is reliable, it is admissible. Manson v.Brathwaite (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 2253. The factors to be considered in determining whether the identification was reliable include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers at 199, 93 S.Ct. at 382.
Evidence at trial revealed that on January 9, 1998, Rickett came home from work at 2 p.m. and noticed that lights were on and that cabinet doors were open. This was abnormal. While in the kitchen, Rickett heard a rustling noise in the hallway and called out her brother-in-law's name. There was no reply. At that point, with the phone in her hand and one foot in the kitchen and one foot in the living room, Rickett discovered an intruder in her living room approximately five feet away from her. Rickett testified that although the living room was dark and the weather cloudy that day, there was some light coming from behind her. Although she did not see the intruder face to face, Rickett saw the side of his head and observed him for about twenty to thirty seconds before he ran out of the house through the front door. Rickett followed the intruder out of her house and watched him run away until she lost sight of him. Thereafter, Rickett walked right back into her house and called 911.
Rickett described the intruder to the 911 operator as a white male with longer brown hair wearing a black baseball-style jacket with elastic at the wrists and the waist, a solid (non-mesh) black cap, blue jeans, and white gym shoes. Minutes later, as Rickett was at her front door inside her house,[1] she observed a black Nissan Pulsar drive slowly on Mack Road and nearly come to a complete stop in front of her house. Rickett testified that there are no traffic lights or stop signs in front of her house and that traffic was light that day. There was thus no reason for the driver to come to a nearly complete stop. As the driver looked up directly at her house and as Rickett looked through the Pulsar's passenger window, she observed the driver's hair and jacket and recognized the driver as the intruder. The Pulsar then drove away and turned right onto Winton Road. Rickett communicated this new information to the 911 operator. Rickett testified that while she was "a nervous wreck," she was also very perceptive of what was going on around her. The 911 operator testified that while Rickett sounded very distressed and upset, she nevertheless spoke very clearly.
Fairfield Police Officer Ken Gerold heard both 911 dispatches. Being in the vicinity of Winton Road, Gerold searched the area looking for the Pulsar. Shortly after, Gerold spotted a black Pulsar driven by a white male wearing a black jacket. Because the car and the driver exactly fit the descriptions from the dispatches, Gerold pulled the car over and broadcasted he had pulled over a car that matched the second dispatch. Gerold testified that Nissan Pulsars are relatively rare cars on the road and that no other car or driver fit the dispatch at the time. It is undisputed that appellant, the driver of the Pulsar, was not wearing a cap when he was pulled over. A subsequent inventory search of the Pulsar revealed a solid black cap in the car. Fairfield Police Officer Russell Strickland responded to assist Gerold. Strickland testified that when he "pulled up, [he] knew [they] had the right guy" as both the car and the driver matched the descriptions from both dispatches.
Fairfield Police Officer Chris Murphy, who was the primary officer assigned to the case, arrived at Rickett's house approximately four to five minutes after Rickett called 911. While on his way to Rickett's house, Murphy heard on his radio that a black Pulsar had been pulled over. Murphy told Rickett that police officers had pulled over a car that matched the description she gave to the 911 operator and that he was taking her to the scene to see if she could identify the suspect. At the scene, Rickett, who stayed in Murphy's cruiser, observed appellant standing at the back of a black Pulsar with his hands on the back of the car. Rickett also observed several police officers around appellant. Rickett identified appellant as both the intruder and the driver of the black Pulsar in front of her house. Murphy testified that at the scene, Rickett seemed very focused on what she was doing. Rickett testified that she was very focused at the scene to make sure she was identifying the right person. While Rickett agreed that the presence of police officers around appellant would tend to make a person look guilty, she did not think the setup influenced the way she saw the situation. Rickett further testified that the police did not influence her identification of appellant as the intruder and driver.
At trial, Rickett identified appellant as the intruder, the driver in front of her house, and the individual standing with his hands on the back of the car at the scene. Rickett stated she was a hundred percent sure that appellant was the intruder in her home on January 9, 1998, the driver of the black Pulsar, and the apprehended individual at the scene.
Upon a thorough review of the record, we find that the out-of-court identification of appellant was not so impermissibly suggestive as to rise to the level of mistake and prejudice contemplated by Biggers. As the Supreme Court of Ohio stated,
 There is no prohibition against a viewing of a suspect alone in what is called a "one-man showup" when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. * * *
 * * * [P]olice action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trial [sic] is fresh.
State v. Madison (1980), 64 Ohio St.2d 322, 332, quoting Bates v.United States (D.C. Cir. 1968), 405 F.2d 1104, 1106.
However, even if we were to assume, for argument's sake, that the identification procedure utilized by the police was impermissibly suggestive, we would, nonetheless, find the out-of-court identification of appellant reliable and admissible under the factors set forth in Biggers. While the living room in which Rickett discovered appellant was dark, Rickett nevertheless was able to observe appellant before he ran out of her house and thus had an opportunity to view appellant. Rickett's degree of attention was underlined by the description of the intruder she gave to the 911 operator. Rickett described the intruder as a white male with longer brown hair and wearing a black baseball-style jacket, a solid black cap, blue jeans, and white gym shoes. Except for the cap which he was not wearing but which was found in his car, this description matched appellant when he was pulled over. At the confrontation, Rickett was certain appellant was the intruder. Finally, a short time elapsed between the crime and the confrontation, approximately one-half hour. In addition, Rickett was able to identify appellant in court, independently of her identification at the confrontation.
Having determined that appellant's out-of-court identification was proper, we further find no violation of the standard set forth in the Strickland test. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." State v. Gibson (1980), 69 Ohio App.2d 91, 95. In the case at bar, the failure of appellant's trial counsel to move to suppress the out-of-court identification did not constitute ineffective assistance of counsel as the evidence indicates that appellant would not have prevailed on a motion to suppress. Appellant's sole assignment of error is overruled.
Judgment affirmed.
POWELL and VALEN, JJ., concur.
[1] Next to the front door were the items the intruder had attempted to steal, including a Sony VCR, a RCA Camcorder, a Sega Play Station, and two garbage bags full of sundry household goods including frozen food and a feminine hygiene product.