DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of conviction and sentence entered by the Lucas County Court of Common Pleas after a jury found defendant-appellant, Eldon E. Petrey, guilty of one count of breaking and entering. From that judgment and from the denial of his motion to suppress, appellant now assigns the following as error on appeal:
 "I. THE WARRANTLESS SEARCH OF THE DORCAS STREET PROPERTY WAS UNCONSTITUTIONAL AND A VIOLATION OF APPELLANT'S RIGHTS PURSUANT TO THE CONSTITUTIONS OF THE STATE OF OHIO AND THE UNITED STATES OF AMERICA.
 "II. THE PRE-TRIAL IDENTIFICATION PROCEDURE WAS SO UNNECESSARILY SUGGESTIVE AS TO VIOLATE DUE PROCESS AND SO INFLUENCED THE COURT IDENTIFICATION, THAT IT WAS ERROR TO ADMIT IT.
 "III. THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In the early morning hours of January 27, 1999, Deputies William Talbott and Randy Likes of the Lucas County Sheriff's Department responded to an alarm at the McCord Carry Out at 6801 Nebraska Avenue in Toledo, Lucas County, Ohio. The alarm indicated that the store had been broken into. Upon arriving at the carry out, the officers inspected the outside of the building and found a ladder on the south side of the building leading to the roof. Officer Talbott climbed the ladder onto the roof and found a hole in the roof. Outside of the hole on the roof, Officer Talbott found approximately eighteen cartons of cigarettes, a hammer, a brown glove, a screwdriver and pliers with the initials "E.P." on them. Believing that the intruder may still be in the building, the officers waited for backup before proceeding any further.
In the meantime, at approximately 2:15 a.m., Derek Thomas had just arrived home at 1944 King Road, from his job when he heard a knock on his door. Thomas answered the door to find a man, who he subsequently identified as appellant, standing in his doorway. Thomas testified at the trial below that appellant was wearing a green military jacket, blue jeans and tennis shoes. Appellant asked Thomas if he could have a ride home and Thomas agreed. When the two were in Thomas' car, Thomas noticed that appellant was carrying a rolled up brown paper bag. Thomas testified that appellant's demeanor was pleasant until they drove by the carry out, which was then surrounded by police cruisers, when appellant mumbled "fucking cops." Appellant then directed Thomas to an address on Dorcas Street where appellant exited the vehicle and entered the home. On his way back home, Thomas drove by the carry out again and decided to find out what was going on. Thomas approached the officers who told him that there had been a robbery. Thomas then told the officers that a man had come to his door asking for a ride and he had just taken the man to a home on Dorcas Street. Thomas further agreed to show the officers the house at which he dropped off the suspect.
Thomas directed Officers Talbott and Likes along with Deputy Gary Lofgren to the home on Dorcas Street and was then returned to the carry out. The officers then knocked on the door of the home. After several minutes, a man, who identified himself as Michael Taylor, came to the door. Upon questioning by the officers, Taylor stated that he lived alone and that no one else was in the house at that time. The officers obtained Taylor's identification and subsequently learned that there were several warrants for Taylor's arrest. The officers therefore told Taylor that he would have to come with them. Because Taylor was not dressed, the officers told him he could get dressed but that they would have to come into the home. Taylor agreed. After Taylor was dressed, however, and the officers were helping him with his keys, Officer Lofgren heard a rustling noise from the bedroom and went in to investigate. Upon shining his flashlight around the room, Officer Lofgren saw a man, appellant, hiding under the bed. Next to the man's shoulder was a brown paper bag. Appellant then came out from under the bed and Officer Lofgren patted him down for weapons. Officer Lofgren then looked under the bed and found the brown paper bag and a green military jacket. The bag was partially open and, looking inside, Officer Lofgren saw what appeared to be a number of scratch off lottery ticket and some rolls of coins. Prior to this time, the officers had learned that scratch off lottery tickets and coins, as well as approximately $300 in cash, had been stolen from the carry out.
The officers then took Taylor and appellant into custody and transported them to the carry out to determine if Derek Thomas could identify either suspect as the man to whom he had given a ride. Initially, the officers removed Taylor from a cruiser and shined a light on him. Thomas, however, stated that Taylor was not the man he had assisted. The officers then removed appellant from a cruiser and shined a light on him. Thomas immediately identified him as the man to whom he had given a ride.
A subsequent investigation of the crime scene revealed that the lottery tickets that were found in appellant's brown paper bag had been taken from the dispensers in the carry out. Moreover, a black hat with the words "East Side" was found in the store rafters. Atul Patel, the owner of the carry out, testified that appellant had come into the store the previous evening and was wearing that very same hat.
On February 2, 1999, appellant was indicted and charged with one count of breaking and entering in violation of R.C.2911.13(A). He subsequently filed motions to suppress the pre-trial identification of him by Derek Thomas and any and all evidence found at 101 North Dorcas Street. Appellant asserted that the identification procedure was biased and prejudicial and that the evidence was seized without a warrant and in violation of his rights against unreasonable searches and seizures. Prior to the trial, the court held a hearing on the motions to suppress at which Derek Thomas, Officers Gary Lofgren, Gary Heil and William Talbott, and Penni Fields, appellant's parole officer, testified. At the conclusion of the hearing, the court denied the motions to suppress. The case then proceeded to trial at the conclusion of which appellant was found guilty of breaking and entering. On June 10, 1999, the trial court entered a judgment of conviction and sentence, in which the court sentenced appellant to a term of eleven months incarceration. It is from that judgment that appellant now appeals.
Appellant's first and second assignments of error challenge the trial court's ruling on his motions to suppress. Appellate review of a denial of a motion to suppress presents a mixed question of law and fact. In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Smith (1997), 80 Ohio St.3d 89,105. Accordingly, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Rhude (1993), 91 Ohio App.3d 623, 626; Statev. Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting those facts as true, this court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. State v. Klein (1991),73 Ohio App.3d 486, 488.
In his first assignment of error, appellant asserts that the trial court erred in denying his motion to suppress the physical evidence found at the Dorcas Street address. Appellant contends that because the evidence was collected without a warrant based on probable cause, the court erred in refusing to suppress it.
In ruling on this motion to suppress, the trial court concluded that appellant had not established that he had the requisite standing to challenge the search. For the following reasons we agree.
The Fourth Amendment protects persons against unreasonable government intrusions, whether a search or a seizure, into areas of recognized privacy expectations. United States v. Chadwick (1977),433 U.S. 1, 11. "In order to challenge a search or seizure on Fourth Amendment grounds, a defendant must possess a legitimate expectation of privacy in the area searched, and the burden is upon the defendant to prove facts sufficient to establish such an expectation." Statev. Steele (1981), 2 Ohio App.3d 105, 107. See, also, State v.Williams (1995), 73 Ohio St.3d 153, 166. With regard to this expectation of privacy, the United States Supreme Court determined inMinnesota v. Carter (1998), 525 U.S. 83, 90, that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."
In the present case, appellant presented no evidence that he was an overnight guest in Taylor's home or possessed any legitimate expectation of privacy in that home. Rather, when police came to Taylor's door, Taylor stated that he lived alone and that no one else was in the home. In addition, Penni Fields, appellant's parole officer, testified that appellant was listed as living with his father at 3009 Elmwood, Sylvania, Ohio, and that he was not given permission to stay overnight anywhere else. She further testified that it would be a violation of his parole to stay overnight at any address other than the one listed in his file. Accordingly, because appellant failed to present evidence sufficient to establish that he had a legitimate expectation of privacy in Taylor's home, he did not have standing to challenge the search of that home and the trial court did not err in denying his motion to suppress the evidence seized during that search. The first assignment of error is not well-taken.
In his second assignment of error, appellant challenges the trial court's denial of his motion to suppress Thomas' pretrial identification of him. Appellant asserts that the identification procedure, in which he was transported to the carry out in a police cruiser and in handcuffs, was so unnecessarily suggestive as to violate his right to due process.
It is well-established that "[w]here a witness has been confronted by a suspect before trial, that witness' identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances." State v. Brown (1988), 38 Ohio St.3d 305, 310, citing Manson v. Brathwaite (1977), 432 U.S. 98. A one-on-one show-up for identification purposes could be deemed a suggestive procedure. See Stovall v. Denno (1967), 388 U.S. 293. However, there is no absolute prohibition in employing such a procedure.Id.; State v. Madison (1980), 64 Ohio St.2d 322, 332, citingBates v. United States (C.A.D.C. 1968), 405 F.2d 1104, 1106. Rather, the likelihood of misidentification becomes the crucial issue and must be determined by a consideration of several factors, including:
 "* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." Manson, supra, at 114.
In the present case the witness, Derek Thomas, drove appellant to the Dorcas Street home approximately forty-five minutes before the identification. Thomas described appellant as wearing a green military jacket, blue jeans and tennis shoes. Thomas also stated that appellant was carrying a brown paper bag. When appellant was at Thomas' door and during the drive to Dorcas Street, Thomas got a good look at appellant. When appellant was apprehended, he was hiding underneath a bed with a green military jacket and a brown paper bag. The officers then transported appellant and Taylor to the carry out to determine if either man was the man Thomas had driven. Initially the officers showed Taylor to Thomas. Thomas immediately stated that Taylor was not the man. The officers then took appellant out of the cruiser. Thomas immediately identified appellant as the man he had driven. Based on the above, we conclude that the trial court did not err in determining that the one-on-one identification was reliable under the totality of the circumstances and, therefore, the trial court did not err in failing to suppress that identification. The second assignment of error is not well-taken.
In his third and final assignment of error, appellant asserts that his conviction was against the manifest weight of the evidence.
Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
Appellant was convicted of breaking and entering in violation of R.C. 2911.13(A). That statute reads:
 "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony."
The evidence presented at the trial below revealed that in the early morning hours of January 27, 1999, someone cut a hole in the roof of the McCord Carry Out and thereby entered the store. A pair of pliers found outside of the hole bore the initials "E.P." In addition, a hat found in the rafters was identified by the owner of the store as one that he had seen appellant wearing the previous evening. Derek Thomas' testimony revealed that appellant was in the vicinity of the carry out that morning. Moreover, when appellant was apprehended he was in possession of lottery tickets that were positively identified as having come from the carry out. He was also in possession of several rolls of coins. The owner of the store testified that several rolls of coins had been stolen along with $300 cash and the lottery tickets.
Upon a review of the evidence presented in the trial below and in light of the applicable standard, we cannot say that the verdict finding appellant guilty of breaking and entering was against the manifest weight of the evidence. Accordingly, the third assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.