OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Jerry K. Shelby, filed November 28, 2006. On August 15, 2006, a Montgomery County Grand Jury indicted Shelby for burglary, in violation of R.C.2911.12(A)(3), and possession of criminal tools, in violation of *Page 2 
2923.24(A). Shelby filed a motion to suppress and an amended motion to suppress his pre-trial identification on August 23 and 28, 2006. Following a hearing, the trial court overruled the motions. On September 21, 2006, Shelby pled no contest to both charges, and the trial court found him guilty and sentenced him to a five year term of community control sanctions.
 {¶ 2} The events giving rise to this matter began on the morning of July 22, 2006, when Julia Hall, of 239 Maryland Avenue in Dayton, Ohio, opened her front door to let her dogs out, and she observed Shelby climbing through the window of a house across the street. Hall called the police and described the perpetrator of the burglary as a white male wearing a dark ball cap, dark pants, and a blue, black, and dingy white or gray checkered flannel coat. Officer Thomas Oney, who responded to the scene, found Shelby, whose clothing matched Hall's description, in a nearby alley carrying a large amount of copper piping. There were no other individuals in the area at the time. Scott Florea, another officer responding to the scene, helped Oney secure Shelby in his cruiser, and then Florea brought Hall to Oney's cruiser to observe Shelby. Oney removed Shelby from the cruiser, and Hall identified him as the man she observed climbing through the window of the house across the street from her.
 {¶ 3} Shelby asserts one assignment of error as follows:
 {¶ 4} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS THE IDENTIFICATION TESTIMONY."
 {¶ 5} "Appellant courts give great deference to the factual findings of the trier of facts. (Internal citations omitted). At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness *Page 3 
credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence." (Internal citations omitted). State v.Purser, Greene App. No. 2006 CA 14, 2007-Ohio-190.
 {¶ 6} Shelby argues that "the one-man show-up identification of the Defendant was unreliable and inadmissible." Specifically, Shelby asserts that Hall's identification was unreliable because Hall never saw Shelby's face. Shelby also argues that the officers "admitted that they had very little discussion with Ms. Hall prior to the show-up, making it difficult to assess the accuracy of the witness' prior description of the Defendant." Finally, Shelby argues that "[b]y asking the Defendant to get out of the cruiser and face the witness, the entire procedure was inherently suggestive."
 {¶ 7} "In speaking of one-man show-ups, the Supreme Court of Ohio has stated in State v. Madison (1980)[,] 64 Ohio St.2d 322 at 331-332:
 {¶ 8} "The crucial issue is whether, based on a totality of the circumstances, there is a `very substantial likelihood of misidentification.' See Neil v. Biggers (1972), 409 U.S. 188.
 {¶ 9} "In Biggers, supra, the court stated, at pages 199-200, that: `* * * [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the *Page 4 
level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. * * *'
 {¶ 10} "In Bates v. United States (C.A.D.C. 1968), 405 F.2d 1104, the court, at page 1106, noted: There is no prohibition against a viewing of a suspect alone in what is called a "one-man showup" when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy.' * * *
 {¶ 11} "`* * *[P]olice action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. * * *'" State v.Click (May 9, 1989), Montgomery App. No. 11074.
 {¶ 12} In Click, one witness observed the perpetrator entering her brightly lit bedroom through a window. The burglar, three or four feet from the witness, was sideways to her, so she did not see his face. She did, however, describe his clothes, gender and race to the police. She later observed the perpetrator outside a police cruiser under a bright street light. She observed that his clothes matched those of the man who entered her room, as did his body size, gender and race. She testified that the police did not coach her to identify him. We determined that the trial court "correctly determined that the identification procedures were not "`so suggestive as to give rise to a substantial likelihood of irreparable misidentification.'" Id. See also, State v. McIntosh (Sept. 21, 1989), Franklin App. No. 89AP-301 (holding that witness' *Page 5 
identification of aggravated burglary suspect based upon "his clothing and his build," and not his facial features, where identification was made shortly after witness observed him and occurred after the suspect was made to stand outside the cruiser," was reliable enough to go before the jury.")
 {¶ 13} Having considered the totality of the circumstances, we find that there is very little likelihood of misidentification. In other words, Hall's identification was not rendered so unreliable that the trial court committed prejudicial error by admitting Hall's testimony. Hall was able to discern Shelby's gender, race and clothing when she saw him going through the window. She stated that only 30 to 45 minutes elapsed between the officer's response to the scene and her identification of Shelby. The police did not coach her identification. In terms of the distance between Hall and Shelby, Hall stated that she could throw a football from her house and hit the window of the house across the street. Hall's identification of Shelby was immediate and unequivocal. When she observed Shelby in custody, Hall testified that he was dressed "exactly alike," and not similar to, the man she had seen in the window. Hall testified, "he wasn't even halfway out of the car before I realized it was him that I had seen goin' through the window." She recognized him "because of the flannel coat. * * * it was the middle of July and nobody would wear a coat in the middle of July. And it was the same kind, and the hat, and the pants." Shelby's argument that it is difficult to assess the accuracy of Hall's prior description of Shelby lacks merit. Hall testified at the suppression hearing and was subject to cross-examination, and the fact that Shelby was the only person in the area, dressed in the clothes Hall described and carrying copper piping, further reinforces the reliability of her identification. Finally, the fact Shelby was asked to exit *Page 6 
the cruiser does not render the procedure unduly suggestive nor does it undermine the reliability of the identification. Shelby's sole assignment of error is overruled. Judgement affirmed.
 WOLFF, P.J. and BROGAN, J., concur. *Page 1