[Cite as *State v. Cantrell*, 2013-Ohio-39.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                              :

    Plaintiff-Appellee               :              C.A. CASE NO.    25192

v.                                         :              T.C. NO.    12CRB1540

DAMIEN CANTRELL                            :                 (Criminal appeal from
                                                   Municipal Court)

    Defendant-Appellant              :

                                                     :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____11th_____ day of _____January_____, 2013.

. . . . . . . . . .

EBONY N. WREH, Atty. Reg. No. 0080629, Assistant City Prosecutor, 335 W. Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. No. 0068346, Greene Town Center, 70 Birch Alley, Suite 240, Beavercreek, Ohio 45440
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Defendant-appellant Damien Cantrell appeals his conviction and sentence

for one count of criminal damaging, in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree. Cantrell filed a timely notice of appeal with this Court on May 8, 2012.

{¶ 2} The incident which forms the basis for the instant appeal occurred on the night of March 7, 2012, at approximately 10:15 p.m. when Trista Vasvary was standing outside of her residence located at 28 Potomac Street in Dayton, Ohio. While she was standing on the side of her house, Vasvary testified that she heard "strange noises coming from the back part of her property." Vasvary went to investigate the noises at which time she observed a young white male crouched down in front of her neighbor's garage door making "jerking movements" as if he was trying to pry something open with a crowbar. Vasvary's neighbor, Fatima Berri, was the complaining witness in the instant case. Vasvary testified that the individual she observed was wearing a bandana, a dark colored sweatshirt, and a pair of blue jeans.

{¶ 3} Vasvary testified that after observing the individual for approximately thirty seconds to just under a minute, she walked to Berri's house and knocked on the door. Berri's son answered the door, and Vasvary instructed him to call the police and inform them that someone was trying to break in his garage. Vasvary also spoke to the dispatcher while they waited for the police to arrive. Vasvary testified that it took the police approximately fifteen minutes to arrive at Berri's residence. Upon arriving, Dayton Police Officer Michael Saylors asked Vasvary questions regarding the incident. Officer Saylors also informed her that they had stopped an individual nearby, but he said he was just a scraper, or one who scavenges garbage bins in hopes of finding something of value to sell. The scraper, later identified as the defendant, Cantrell, was accompanied by another

individual, Timothy Stoops, who was also purportedly scraping on the night in question. After speaking with Cantrell and Stoops and checking them for outstanding warrants, the police initially released them.

{¶ 4} After asking Vasvary some additional questions regarding the crime she witnessed, Officer Saylors radioed another police officer and directed him to pick Cantrell up and transport him back to Berri's residence at 24 Potomac Street. Upon Cantrell's return, Vasvary identified him as the man she observed attempting to force open Berri's garage door. Cantrell was subsequently arrested and taken to jail.

{¶ 5} On March 8, 2012, Cantrell was charged by complaint with one count of criminal damaging, in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree. At his arraignment, Cantrell pled not guilty. Cantrell's case proceeded to bench trial on April 16, 2012. The trial court found Cantrell guilty and sentenced him to ninety days in jail, but suspended seventy-seven days. The trial court ordered Cantrell to pay a fine of $100.00, but suspended $50.00. Cantrell was also ordered to pay court costs, and the trial court ordered him not to return to 24 Potomac Street.

{¶ 6} It is from this judgment that Cantrell now appeals.

{¶ 7} Because they are interrelated, Cantrell's first and second assignments of error will be discussed together as follows:

{¶ 8} "THE CONVICTION OF MR. CANTRELL FOR CRIMINAL DAMAGING WAS BASED ON INSUFFICIENT EVIDENCE."

{¶ 9} "THE CONVICTION OF MR. CANTRELL WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 10} In his first assignment, Cantrell contends that the evidence adduced at trial was insufficient to sustain a conviction for criminal damaging. Specifically, Cantrell argues that the State presented no evidence that any actual damage was done to Berri's garage door. Cantrell also asserts that there was insufficient evidence to establish a loss in value, use, or enjoyment regarding the garage door. In his second assignment, Cantrell asserts that the his conviction for criminal damaging was against the manifest weight of the evidence.

{¶ 11} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*.

{¶ 12} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a

judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 13} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 14} R.C. 2909.06(A)(1) defines criminal damaging and states as follows:

(A) No person shall cause, or create a substantial risk of physical harm to any

property of another without the other person's consent:

(1) Knowingly, by any means; ***.

{¶ 15} "Physical harm to property" is defined in R.C. 2901.01(A)(4) in pertinent part:

[A]ny tangible or intangible damage to property that, in any degree, results in

loss to its value or interferes with its use or enjoyment.

{¶ 16} The evidence adduced at trial established all of the elements necessary to sustain Cantrell's conviction for criminal damaging. Initially, Cantrell argues that the evidence fails to establish that any actual damage was done to the garage door. Vasvary and Berri, however, both testified that they observed new damage to the garage door. Specifically, Vasvary testified that she witnessed Cantrell inflict damage to the door, namely

that the garage door had been noticeably "pulled out" and that the bottom hooks on the door had been "bent and pried out." Vasvary also testified that after the incident occurred the garage door stuck out far enough to where she could see into Berri's garage. Berri testified that after the attempted forced entry, the garage door stuck out and was "very open." Berri also testified that the hooks on the bottom of the garage door were missing after the incident.

{¶ 17} Officer Saylors testified that he inspected the damage to the garage door and noted that the bottom of the door looked as if it had been pried apart. Officer Saylors also testified that the hinge area on the bottom of the door had been pried away from the wood.

{¶ 18} Cantrell also asserts that the State presented insufficient evidence to establish a loss in value or loss of use or enjoyment of the garage door. We note that evidence was adduced from the State's witnesses which established that the garage door was in poor condition and needed to be replaced prior to the attempted forced entry. However, the testimony from Vasvary and Berri clearly established that after the incident, the door would not close completely and that the bottom hinges were damaged by being apparently pried apart. "Loss of value from observable damage may be inferred." *State v. Ritchie*, 3d Dist. Seneca Nos. 13-01-37, 13-01-38, 13-01-39, 2002-Ohio-2178. Similarly, where a defendant argued that there was insufficient evidence to convict him of criminal damaging where he broke a window which was already cracked, the Ninth District Court of Appeals held that the loss of use and enjoyment could be inferred because the "protection which the cracked window once offered against the elements was lost." *City of Akron v. Butler*, 9th Dist. Summit No. 12032, 1985 WL 10850 (September 4, 1985).

{¶ 19}  In the instant case, loss in value or loss of use or enjoyment of the garage door can be inferred from the observable damage to it.   Vasvary and Berri both testified that the garage door was not pried open prior to the attempted forced entry.   Berri testified that she stores many items in her garage.   Although the garage door was not in good condition prior to the incident, the fact that the door did not close completely after the incident constitutes observable damage from which can be inferred a loss to its value, use, and enjoyment.   Thus, a review of the record convinces us that the State's evidence, taken in its entirety, was sufficient to sustain Cantrell's conviction for criminal damaging.

{¶ 20}  Cantrell's conviction is not against the manifest weight of the evidence. The credibility of the witnesses and the weight to be given their testimony were matters for the court to resolve.   Cantrell presented evidence at trial which consisted of his and Stoops' testimony that they were only in the area to scrape and had not been near Berri's residence where the incident occurred.   Additionally, Cantrell attempted to undermine the State's case by discrediting the testimony of Vasvary and Berri.   Specifically, Cantrell attempted to discredit Vasvary's identification of Cantrell as the perpetrator of the attempted forced entry. Cantrell also attacked Berri's recollection of the condition of the garage door before and after the incident.   Nevertheless, the court did not lose its way simply because it chose to believe the evidence provided by the State's witnesses, namely Vasvary and Berri.   Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 21}  Cantrell's first and second assignments of error are overruled.

{¶ 22}  Cantrell's third and final assignment of error is as follows:

**{¶ 23}** "MR. CANTRELL'S ONE-MAN SHOW-UP WAS INHERENTLY SUGGESTIVE AND UNRELIABLE."

**{¶ 24}** In his final assignment, Cantrell argues that the one-man show-up identification conducted by the police was unreliable and violated his due process rights. Initially, we note that Cantrell never filed a motion to suppress or any other type of motion with the trial court requesting that the pre-trial identification made by Vasvary be excluded from evidence. Additionally, Cantrell never objected to introduction of the identification evidence during trial. Accordingly, Cantrell has waived all but plain error regarding the identification issue. Plain error "should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice." *State v. Underwood*, 3 Ohio St.3d 12, 14, 444 N.E.2d 1332 (1983). Plain error exists only where it is clear that, but for the error, the result of the trial would have been different. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, at ¶ 52.

**{¶ 25}** Regarding the use of one-man show-ups, the Supreme Court of Ohio has stated in *State v. Madison*, 64 Ohio St.2d 322, 331-332, 415 N.E.2d 272 (1980):

The crucial issue is whether, based on a totality of the circumstances, there is a "very substantial likelihood of misidentification." See *Neil v. Biggers* , (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.

In *Biggers*, supra, the court stated, at pages 199-200, that: "* * * [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of

the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. * * *"

In *Bates v. United States* (C.A.D.C. 1968), 405 F.2d 1104, the court, at page 1106, noted: "There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy." * * *

{¶ 26} "* * *[P]olice action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. * * *" *State v. Click*, 2d Dist. Montgomery No. 11074, 1989 WL 49408 (May 9, 1989).

{¶ 27} In *Click*, one witness observed the perpetrator entering her brightly lit bedroom through a window. The burglar, three or four feet from the witness, was sideways to her, so she did not see his face. *Id*. She did, however, describe his clothes, gender and race to the police. *Id*. She later observed the perpetrator outside a police cruiser under a bright street light. *Id*. She observed that his clothes matched those of the man who entered her room, as did his body size, gender and race. *Id*. She testified that the police did not coach her to identify him. *Id*. We determined that the trial court "correctly determined that

the identification procedures were not 'so suggestive as to give rise to a substantial likelihood of irreparable misidentification.'" *Id*. See also, *State v. McIntosh*, 10th Dist. Franklin No. 89AP-301, 1989 WL 109263 (Sept. 21, 1989)(holding that witness' identification of aggravated burglary suspect based upon "his clothing and his build," and not his facial features, where identification was made shortly after witness observed him and occurred after the suspect was made to stand outside the cruiser, "was reliable enough to go before the jury.")

{¶ 28} In the instant case, the totality of the circumstances surrounding Vasvary's show-up identification of Cantrell establishes very little likelihood of misidentification. Accordingly, Vasvary's identification of Cantrell was not rendered so unreliable that the trial court committed plain error by admitting Vasvary's testimony. Vasvary testified that she was able to discern Cantrell's gender, race and clothing when she saw him attempting to pry open Berri's garage door. The record establishes that Vasvary's view of Cantrell was relatively unobstructed. Vasvary testified that she was able to observe Cantrell for approximately thirty seconds. Vasvary also provided an accurate physical description of Cantrell insofar as she informed the police that he was approximately 5'9", wearing a bandana, and had a scruffy face and stocky build. Officer Saylors testified that Cantrell matched Vasvary's physical description of him "100 Percent." Vasvary further testified that less than thirty minutes elapsed between the officer's response to the scene and her identification of Cantrell in the rear of the police cruiser. Vasvary testified that there was sufficient lighting when she identified Cantrell because the police officers shined a flashlight on his face. There is no evidence in the record which establishes that the police coached her

identification in any way. There is no indication in the record that Vasvary's identification of Cantrell was not immediate and unequivocal. Thus, we find that the admission of Vasvary's pre-trial identification of Cantrell was not made in error and certainly does not rise to the level of plain error.

{¶ 29} Cantrell's third and final assignment of error is overruled.

{¶ 30} All of Cantrell's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

Ebony N. Wreh
John A. Fischer
Hon. Deirdre E. Logan